UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| PHOENIX METAL CO., LTD.,<br><br>                             Plaintiff,<br>      v.<br>UNITED STATES,<br><br>                            Defendant. | Ct No. 23-00048 |

## COMPLAINT

Phoenix Metal Co., Ltd. ("Phoenix"), by their undersigned attorneys, hereby brings this civil action and alleges the following:

### Administrative Decision Contested

1. Plaintiff contests (a) the affirmative final determination as to evasion made pursuant to 19 U.S.C. § 1517(c), the Enforce and Protect Act ("EAPA"), Consolidated Investigation No. 7621, issued by U.S Customs and Border Protection's ("CBP") Trade Remedy & Law Enforcement Directorate ("TRLED") on September 6, 2022 ("TRLED Final Determination"); and (b) CBP Office of Trade, Regulations & Rulings' ("ORR") administrative review decision ("ORR Decision") dated January 18, 2023 affirming TRLED's final determination.

### Parties

2. Phoenix acted as importer of record of certain cast iron soil pipe ("covered merchandise")

that it produced in Cambodia, as a privately held company organized under the laws of Cambodia.  Plaintiff was named and targeted by CBP in the EAPA Investigation, Consolidated No. 7621 (hereinafter, "EAPA 7621").  Plaintiff, as an importer, is thus an interested party in accordance with 19 U.S.C. § 1517(a)(6)(A)(i).

3. Defendant is the United States of America, acting by and through CBP.

## Jurisdiction

4. This Court has jurisdiction in accordance with 28 U.S.C. § 1581(c) for any civil action commenced under section 517 of the Tariff Act of 1930 (19 U.S.C. § 1517).  Plaintiff Phoenix is commencing this action in accordance with 19 U.S.C. § 1517(g)(1), which provides for judicial review by the U.S. Court of International Trade of TRLED's final determinations under 19 U.S.C. § 1517(c) and ORR's administrative review determinations under 19 U.S.C. § 1517(f).

## Standing

5. Plaintiff Phoenix is a "person determined to have entered covered merchandise through evasion" and therefore has standing to bring this action in accordance with 19 U.S.C. § 1517(g)(1).  It is noted that Phoenix is also an exporter of the covered merchandise.

6. Plaintiff has been adversely affected and aggrieved by TRLED's affirmative evasion determination made under 19 U.S.C. § 1517(c) and ORR's affirmation of TRLED's determination made under 19 U.S.C. § 1517(f), which are agency actions within the meaning of Section 702 of Title 5 of the United States Code.  Therefore, Plaintiff has

standing to bring this action under 28 U.S.C. § 2631(i).

## Timeliness

7. An action under 28 U.S.C. § 1581(c) based on 19 U.S.C. § 1517 must be commenced within thirty (30) business days after ORR completes its administrative review under 19 U.S.C. § 1517(f).  *See* 19 U.S.C. § 1517(g)(1).  ORR completed its administrative review on January 18, 2023 and transmitted the ORR decision (dated January 18, 2023).  The thirtieth business day after January 18, 2023 (excluding Saturdays, Sundays, and federal holidays -) falls on Thursday, March 2, 2023.  Accordingly, this action is timely filed.

## Facts

8. On February 15, 2022, the Cast Iron Soil Pipe Institute ("Alleger") submitted a request to CBP to initiate an EAPA investigation against Glendale Plumbing and Fire Supply, Inc. ("GPFS") and its affiliated Company AKW Supply Co. ("AKW") alleging that they shipped Chinese cast iron soil pipe through Cambodia and thereby evaded antidumping and countervailing duty orders on *Cast Iron Soil Pipe from the People's Republic of China* ("Allegation").  *See* Dep't Commerce, *Cast Iron soil Pipe From the People's Republic of China*: Antidumping Duty Order, 86 Fed. Reg. 19035 (May 3, 2019) and Dep't Commerce, *Cast Iron Soil Pipe From the People's Republic of China*: Countervailing Duty Order, 86 Fed. Reg. 19035 (May 3, 2019) (together: the "Orders").  The Alleger claimed that GPFX and AKW received CISP from Phoenix, who the Alleger characterized in conclusory statements, unsupported by evidence, as a Cambodian "front" company and a "shell" company.  Allegation at 4, 6.

9. CBP then initiated a secret investigation, EAPA Inv. Inv. 7708, which appears to have

targeted primarily Phoenix. *See* CBP Final Determination at 5[1] and n.27. CBP did not inform Phoenix of the allegations against it and provided Phoenix no opportunity to defend against the allegations before it imposed interim measures on the company on or around March 25, 2022. *See* Email from Tobias Vandall to Phoenix re: EAPA Investigation 7621 – Notice of Initiation of Investigation and Interim Measures (March 25, 2022). CBP's interim measures included refiling entry summaries submitted on or after February 28, 2022, requiring live entries and cash deposits of antidumping ("AD") and countervailing ("CVD") duties amounting to 250.62 percent *ad valorem*.[2] *See also* CBP, Notice of Initiation of Investigation and Interim Measures – EAPA Cons. Case 7621 (March 28, 2022) ("NOI").

10. Phoenix reacted immediately upon notice to CBP's NOI. *See* Email from Linghong Li to CBP (March 28, 2022). Phoenix expressed its dismay at CBP's secret investigation, which the company referred to as a "trial" without prior notification.

> Phoenix Metal Co., Ltd. Has not received any form of investigation documents, questionnaires or notices about the company's business from any party before this trial.
>         . . .
> {S}ending us trial directly without prior investigation is not in line with common sense and violates the principle of fairness and justice. All our businesses are carried out according to law under the supervision of Cambodian officials.

11. *Id.* Altogether, Phoenix maintained a robust email correspondence with CBP during the course of EAPA Inv. 7621. *See*, *e.g.*, Emails from Phoenix dated April 2, 2022 to

---

[1] CBP appears to have forgotten to insert page numbers in its Final Determination. Citations to page numbers are therefore Phoenix's own insertions for ease of reference.

[2] *See* AD Order, 84 Fed. Reg. at 19,036 and CVD Order, 84 Fed. Reg. at 19,040.

which CBP did not respond until April 19, 2022; Phoenix Email dated April 21, 2022; Email Exchange between Phoenix and CBP on May 23, 2022; Email exchange between Phoenix and CBP on May 31, 2022; Email Exchange between Phoenix and CBP on June 3, 2022.

12. CBP issued an initial request for information, to which Phoenix responded on April 26, 2022, and a supplemental request for information, to which Phoenix responded on June 3, 2022.  *See* Phoenix Response to Request for Information (April 26, 2022) ("RFI Rsp.") and Phoenix Response to Supplemental Request for Information (June 3, 2022) ("Supp. RFI Rsp.").

13. In its RFI responses, Phoenix explained that its Ms. Li also owned (or had owned) Dalian Metal I/E Co., Ltd., Dalian Metal FTZ, Chinese trading companies; Lino International, a U.S. company that ceased business in 2021, and Dalian Lino, a Chinese company that also ceased business in 2021.  *See* RFI Rsp. At 4 and Supp. RFI Rsp. At 4-5.  Neither Dalian Metal I/E nor Dalian Metal FTZ are producers of CISP.  *See* Dep't Commerce AD Order 86 Fed. Reg. at 19,036 (list of producers and exporters that participated in Commerce's antidumping investigation).  Phoenix explained in its RFI responses that it rented its production workshop and bought machinery from HiCreek Plumbing Inc., Ltd. ("HiCreek"), a Cambodian producer of CISP.  RFI Rsp. At 8-10, 27, and Exhibits II-3-1, II-3-2, II-4, & VI-1.  HiCreek had not used its CISP production facility since February 2021 when CBP determined that merchandise HiCreek exported to the U.S. was Chinese CISP and not of Cambodian Origin.  *See* CBP, EAPA Case 7454, Notice of Determination as to Evasion (February 8, 2021) and EAPA Case 7455,

5

Notice of Determination as to Evasion (February 8, 2021). Phoenix also explained that it planned to move out of HiCreek's facility to a new production facility in February 2022. RFI Rsp. At 9 & 27.

14. Phoenix explained further that it stopped production at HiCreek's facility [at the end of March 2022], and had no production in [April or May 2022]. Phoenix then had a short agreement with HiCreek for production [in June] in order to accommodate CBP's verification team, who visited the factory from June 14-17, 2022. Supp. RFI Rsp. At 6; Verif. Rpt. At 5. Phoenix, however, began installing machinery at its new factory [at the end of May 2022]. *Id*. and Exhibit S-II-2.

15. CBP also put various memoranda on the record of this case in April 2022. *See* CBP, Adding Information to the Administrative Records of EAPA Consolidated Case 7621 and EAPA Case 7624 (April 20, 2022) (documents from EAPA consolidated case 7454 and EAPA case 7455); CBP, Adding Information to the Administrative Records of EAPA Consolidated Case 7621 and EAPA Case 7624 (April 21, 2022) (documents pertaining to Little Fireflies, Granite Plumbing, and other companies not party to this case); and CBP, Adding Information to the Administrative Records of EAPA Consolidated Case 7621 and EAPA Case 7624 (April 20, 2022) (including Cambodian import and export data, documents pertaining to GPFS, and Linghong Li emails). CBP marked most of the information included in its memoranda as business confidential, which was not disclosed to Phoenix and to which Phoenix was unable to respond in a meaningful manner in the course of the investigation.

16. On June 3, 2022, CBP notified that it would verify Phoenix's RFI responses on-site in

Cambodia at Phoenix's production facilities from June 14-17, 2022.  *See* CBP, Engagement Letter to Phoenix and Site Verification Agenda (June 3, 2022).  CBP's agenda included tours of Phoenix's old and new factories and document review.

17. CBP's verification report presents a picture of chaos.  *See* Verif. Rpt. at 4, 6, 9-10, 12-13, 14.  The overall impression of CBP's on-site visit that the Verification Report conveys is one where a single person responsible for the conduct of Phoenix's business, Ms. Li as the company's owner and manager, is overwhelmed by interrogations from a throng of undisciplined U.S. Government agents.  First, CBP showed up at this small company with seven officers and agents – two international trade analysts, two auditors, one import specialist, a CBP Attaché, and an agent of undisclosed position from U.S. Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations.  *See id*. at 4 and Attachment 1, On-Site Visit Attendance List.

18. CBP's Verification Report gives no indication as to the function of each one of these officers and agents.  The Report does not identify who conducted the interviews with Ms. Li and factory personnel, who participated in the factory tours, who made observations and conclusions, who asked questions to ensure full understanding of the company's production process and documents, who reviewed documents, and whether different CBP officials engaged in diverse activities taking place at the same time.

19. Nevertheless, CBP's verification proved that Phoenix produced the CISP that it exported to the United States from the beginning of its production in July 2021 until production stopped at the end of March in 2022, and Phoenix had the necessary facilities, equipment, personnel, and raw materials to do so.  Verif. Rpt. at 4-7.

20. Phoenix submitted its written argument to CBP on August 2, 2022.  *See* Phoenix, EAPA Cons. Case 7621: Cast Iron Soil Pipes: Submission of Written Argument (August 2, 2022).  CBP objected to certain information in Phoenix's written argument regarding particular omissions in CBP's Verification Report, claiming that such argument was "new factual information."  *See* CBP, Email re: EAPA 7621 – Phoenix Metal's Written Argument (August 11, 2022).  It is indeed hard to understand how past factual occurrences witnessed by one or the other of seven CBP officers and embedded in their memory or internal, undisclosed, verification notes can be considered "new" information.  Nevertheless, Phoenix resubmitted its Written Argument, with the offending text deleted.  *See* Phoenix, EAPA Cons. Case 7621: Cast Iron Soil Pipes: Submission of Written Argument (August 15, 2022) ("Phoenix Written Arg.").  The Alleger likewise submitted Written Arguments, to which Phoenix replied on August 19, 2022.  *See* EAPA Cons. Case 7621: Cast Iron Soil Pipes: Submission of Rebuttal Brief (August 19, 2022) ("Phoenix Rebuttal").

21. CBP issued its Final Determination on September 6, 2022 finding that Phoenix evaded the AD/CVD Orders on CISP from China.  Although CBP admitted that Phoenix demonstrated at verification that it in fact produced CISP at its facility in Cambodia, CBP resorted to adverse facts available and applied a "comingling" theory, claiming that Phoenix did not cooperate to the best of its ability, and thus applying its evasion finding to all merchandise exported by Phoenix despite its demonstrated production capacity. Final Determination at 32 & 33.

22. Phoenix filed a request for administrative review on October 19, 2022.  *See* EAPA

Cons. Case 7621: Cast Iron Soil Pipes: Request for Administrative Review (October 19, 2022) ("Phoenix Request for AR"). The Administrative Review subsequently commenced on October 20, 2022. *See* EAPA Cons. Case 7621; Cast Iron Soil Pipes: Commencement of Administrative Review (October 20, 2022) ("Administrative Review Commencement"). The final results of the administration were completed on January 18, 2023, sustaining TRLED's final determination of evasion. *See* EAPA Cons. Case 7621; Cast Iron Soil Pipes: Review Request Determination ( January 18, 2023) ("Review Determination"). This action ensued.

## COUNT I

23. The allegations of paragraphs 1 through 22 are restated and incorporated herein by reference.

24. TRLED's determination to initiate an EAPA investigation against Phoenix on December 9, 2021 under 19 U.S.C. § 1517(b)(1) is unlawful. Section 1517(b)(1) directs CBP to initiate an investigation only if it determines that the information provided in the allegation "reasonably suggests" that an importer entered covered merchandise into the United States through evasion. 19 U.S.C. § 1517(b)(1); *see also*, 19 C.F.R. § 165.15(b)(2).

25. The Alleger's Allegation consisted only of general trade data and discussion of a prior case, which is not sufficient to reasonably suggest that Phoenix evaded the Orders as defined by 19 U.S.C. § 1517(a)(5). TRLED therefore had no evidentiary basis that would reasonably suggest evasion and TRLED initiated EAPA Inv. 7621 in violation of 19 U.S.C. § 1517(b)(1).

## COUNT II

26. The allegations of paragraphs 1 through 25 are restated and incorporated herein by reference.

27. TRLED specifically ignored a significant amount of information on the record to fabricate a conclusion that the soil pipes were transshipped. Specifically, TRLED ignored that Phoenix's factory was operating when visited by CBP, and further ignored that some equipment was moved to a new location set up by Phoenix. Instead, TRLED cherry picked a specific pipe size that verifiers claimed not to see on site as evidence that the soil pipes were transshipped.

28. TRLED and ORR have therefore not complied with the procedures required under 19 U.S.C. § 1517(c)(1)(A) & (f) which allow a determination of evasion only if supported by substantial evidence, considering the case record as a whole.

29. In their determinations in EAPA Inv. No 7621, TRLED and ORR have not applied an appropriate substantial evidence standard, which "requires more than mere assertion of 'evidence which in and of itself justified {the determination}, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn.'" *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997) (*quoting Universal Camera*, 340 U.S. at 487). Substantial evidence may not be based on "isolated tidbits of data which suggest a result contrary to the clear weight of the evidence." *USX Corp. v. United States*, 11 C.I.T. 82, 84 (1987).

## COUNT III

30. The allegations of paragraphs 1 through 29 are restated and incorporated herein by reference.

31. TRLED and ORR further only relies on a singular piece of information gathered from third parties and translated from Khmer to come to the determination that soil pipes were transshipped. Their reasoning based on the Bill of Landing is that instead of an import of raw materials, this is evidence of an import of finished pipe. However, this conclusion is not supported by substantial evidence—a single third party shipping document—and discounts evidence pointing to the conclusion that the shipment concerned raw material.

32. TRLED and ORR have therefore not complied with the procedures required under 19 U.S.C. § 1517(c)(1)(A) & (f) which allow a determination of evasion only if supported by substantial evidence, considering the case record as a whole. This tidbit of information cannot be used to come to a conclusion that steel pipes were imported into Cambodia from China, much less that they were exported by Phoenix to the United States.

## COUNT IV

33. The allegations of paragraphs 1 through 32 are restated and incorporated herein by reference.

34. TRLED's final determination and ORR's final determination that Phoenix evaded the Orders by transshipping Chinese soil pipes relies further on the fact that Phoenix refused to produce production records at the time of verification as evidence that no steel pipes were produced in the factory. However, TRLED knew and should have considered that

production at the time was running only for verification. By the time verification had been scheduled, all records and equipment were in the process of being moved to the new factory. Furthermore, TRLED discounted the facts that contemporaneous pipes were in production at the time of the allegations, and that the Ministry in Cambodia had previously visited the factory, and provided certificates of origin for these products.

35. TRLED and ORR have therefore not complied with the procedures required under 19 U.S.C. § 1517(c)(1)(A) & (f) which allow a determination of evasion only if supported by substantial evidence, considering the case record as a whole. The majority of evidence in this case clearly shows that these steel pipes were produced in Cambodia, however TRLED relies on obscure facts to come to a contrary conclusion.

## COUNT V

36. The allegations of paragraphs 1 through 35 are restated and incorporated herein by reference.

37. Merely advising Phoenix in advance does not rectify the arbitrary assignment of seven verifiers to verify simple plant. In practice, the U.S. Department of Commerce uniformly relies on two verifiers for the more complicated tasks of calculating antidumping or countervailing duties, and as an exception will sometimes have a trainee involved as well. CBP's decision to have seven verifiers is an abuse of discretion by TRLED that inevitably overwhelmed the limited staff at Phoenix's factory.

38. This Court will hold as unlawful any administrative decision that is arbitrary, capricious, or an abuse of discretion. *See* 19 U.S.C. § 1517(g)(2)(B). An agency decision is arbitrary and

capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

39. An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors. *Arnold P'ship v. Dudas*, 362 F.3d 1338, 1340 (Fed. Cir. 2004).

40. The decision to have an inordinate number of verifiers is an abuse of discretion by TRLED, intended to undermine the fundamental principles of fairness that guide international trade.

## COUNT VI

41. The allegations of paragraphs 1 through 40 are restated and incorporated herein by reference.

42. TRLED in their decision relied heavily on the ownership structure of Phoenix, namely the importance of Ms. Li.  However, their analysis of the ownership structure of Phoenix and the affiliation structure thereof is just that; TRLED fails to provide any evidence relating to the ownership structure of Phoenix to transshipment in this case.  TRLED instead only indicates that Ms. Li is highly knowledgeable of the industry and well versed in the merchandise and capable of setting up operations in low tariff jurisdictions.

43. TRLED and ORR have therefore not complied with the procedures required under 19 U.S.C. § 1517(c)(1)(A) & (f) which allow a determination of evasion only if supported by substantial evidence, considering the case record as a whole.

## COUNT VII

44. The allegations of paragraphs 1 through 43 are restated and incorporated herein by reference.

45. TRLED and ORR explicitly invoked the adverse inferences provisions, 19 U.S.C. § 1517(c)(3) and 19 C.F.R. § 165.6.  CBP's application of adverse inference is unsupported by record evidence, arbitrary and capricious because Phoenix cooperated to the best of its ability. Further, the record available to Phoenix contains no evidence whatsoever that Phoenix shipped Chinese soil pipes. CBP applied adverse inferences without the proper factual and legal predicate.

46. TRLED's and ORR's application of adverse inferences is also arbitrary and capricious and otherwise contrary to the law, because the facts in dispute are not reasonably supportive of a conclusion that the production that was documented and witnessed by CBP did not take place.  *See* 19 U.S.C. § 1517(c)(3)(A).

## COUNT VIII

47. The allegations of paragraphs 1 through 46 are restated and incorporated herein by reference.

48. TRLED's imposition of interim measures suspending liquidation of its entries, requiring cash deposits from Phoenix of 250.62% *ad valorem* as of December 9, 2021, threatening

liquidated damages, and threatening liquidation of entries at high duty rates without consideration of the record evidence as a whole and without providing Phoenix the opportunity to be heard and defend against allegations of evasion and to prevent further injury to its property violated Phoenix's due process rights under the Fifth Amendment of the U.S. Constitution.

49. Procedural due process imposes constraints on governmental decisions which deprive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment. *Mathews v. Eldridge*, 424 U.S. 319, 332; 96 S. Ct. 893, 901 (1976). It is well established that "[t]he fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean,* 234 U.S. 385, 394, 34 S. Ct. 779, 58 L. Ed. 1363 (1914).

50. "It is undisputed that the test for constitutional sufficiency of notice is whether '[the] notice [is] reasonably calculated, under all the circumstances, to apprize interested parties of the pendency of the action and afford them an opportunity to present their objections. . . . . The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected.' *Transcom, Inc. v. United States*, 121 F. Supp. 2d 690, 708 (Ct. Int'l Trade 2000) *citing to Mullane v. Cent. Hanover Bank & Tr. Co*., 339 U.S. 306, 314; 70 S. Ct. 652 (1950).

51. Such opportunity must occur "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333; 96 S. Ct. 893 (1976). Ex parte and redacted investigations do not meet this minimum standard of due process.

**COUNT IX**

52. The allegations of paragraphs 1 through 51 are restated and incorporated herein by reference.

53. TRLED and ORR violated Phoenix's due process rights under the Fifth Amendment of the U.S. Constitution by not making available to Phoenix the full, unredacted report or transcript of CBP's agent's testimony and exhibits and other unredacted papers and documents filed in EAPA Inv. 7621 upon which TRLED and ORR based their determinations.

54. "Due process 'forbids an agency to use evidence in a way that forecloses an opportunity to offer a contrary presentation,' *Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 289 n.4, 95 S. Ct. 438, 42 L. Ed. 2d 447 (1974). Thus, to comply with due process, Customs' procedures must afford adequate opportunity for importers to respond to the evidence used against them." *Royal Brush Mfg. v. United States*, No. 19-00198, 2020 Ct. Intl. Trade LEXIS 179, at *23 (Ct. Int'l Trade Dec. 1, 2020). TRLED did not so provide this opportunity when it mattered most, in the course of the investigation.

## COUNT X

55. The allegations of paragraphs 1 through 54 are restated and incorporated herein by reference.

56. Insofar as the EAPA statute, and in particular 19 U.S.C. § 1517(e) (Interim measures) cannot be properly interpreted to afford importers due process under the Fifth Amendment of the U.S. Constitution and CBP is permitted to impose punitive interim measures on Plaintiff without giving Plaintiff the opportunity to defend and rebut the factual and legal bases for such measures, the EAPA statute is incompatible with the Fifth Amendment of

the U.S. Constitution. "It is impossible to comprehend how an importer's lack of a vested right to import merchandise in the future negates the obligation to provide the importer with notice prior to imposing an antidumping duty for the merchandise already imported. The Court shares Transcom's bewilderment." *Transcom, Inc. v. United States*, 24 Ct. Int'l Trade 1253, 1271, 121 F. Supp. 2d 690, 707 (2000).

57. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. . . . The notice must be of such nature as reasonably to convey the required information, . . . and it must afford a reasonable time for those interested to make their appearance." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 657 (1950).

## COUNT XI

58. The allegations of paragraphs 1 through 57 are restated and incorporated herein by reference.

59. Insofar as CBP's EAPA regulations, 19 CFR §§ 165.1 through 165.47, cannot be properly interpreted as requiring CBP to disclose confidential documents upon which CBP bases its determinations to Plaintiff or Plaintiff's legal counsel under an administrative protective order or do not allow the importer, foreign producer or exporter and their legal counsel full participation rights during the investigation, including directly after CBP receives an allegation of evasion before initiating an investigation, and at any and all related site visits, the EAPA regulations violate the Fifth Amendment of the U.S. Constitution. "{D}ue

process 'forbids an agency to use evidence in a way that forecloses an opportunity to offer a contrary presentation,' *Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 289 n.4, 95 S. Ct. 438, 42 L. Ed. 2d 447 (1974). Thus, to comply with due process, Customs' procedures must afford adequate opportunity for importers to respond to the evidence used against them. *Royal Brush Mfg. v. United States*, No. 19-00198, 2020 Ct. Intl. Trade LEXIS 179, at *23 (Ct. Int'l Trade Dec. 1, 2020).

## **COUNT XII**

60. The allegations of paragraphs 1 through 59 are restated and incorporated herein by reference.

61. TRLED's failure to inform the Department of Commerce ("Commerce") of its September 6, 2022 Final Determination and request specific assessment rates from Commerce violated 19 U.S.C. § 1517(d)(1)(C), which required that TRLED, after its Final Determination under 19 U.S.C. § 1517(c), "shall – notify the administering authority of the determination and request that the administering authority – (i) identify the applicable antidumping or countervailing duty assessment rates" for such covered merchandise, or "(ii) if no such assessment rate is available at the time, identify the applicable cash deposit rate…with the . . . assessment rate to be provided as soon as that rate becomes available." 19 U.S.C. §§ 1517(d)(1)(C)(i) & (ii).

62. The public record contains no evidence that TRLED ever informed Commerce of its affirmative evasion determination and requested Commerce to determine the applicable assessment rate applicable to Phoenix's entries. TRLED's failure to comply with its statutory obligation is contrary to the law. *See* 19 U.S.C. § 1517(g)(2)(B).

## **DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment from the Court:

(1) Declaring TRLED's September 3, 2021 initiation of EAPA Inv. 7621 against Plaintiffs and TRLED's December 9, 2021 imposition of interim measures null and void; and

(2) Declaring TRLED's imposition of interim measures in EAPA Inv. 7621 invalid for lack of reasonable suspicion of evasion; and

(3) Declaring TRLED's and ORR's final determinations unsupported by substantial evidence; and

(4) Declaring TRLED's and ORR's determinations arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law; and

(5) Declaring TRLED's and ORR's failure to provide Plaintiffs the opportunity for effective legal representation and advice in violation of 5 U.S.C. § 555(b); and

(6) Declaring TRLED's and ORR's failure to provide unredacted documents or partial unredacted documents consists of solely Plaintiff's own business confidential information – notwithstanding the existence of an administrative protective order – arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law; and

(7) Declaring TRLED's and ORR's determinations in violation of the Due Process Clause of the Fifth Amendment of the U.S. Constitution; and

(8) Insofar as CBP's EAPA regulations, 19 CFR §§ 165.1 through 165.47, cannot be properly interpreted as requiring CBP to disclose confidential documents upon which CBP bases its determinations to Plaintiff and allowing the importer, foreign exporter or producer, and their

legal counsel full participation rights, declaring CBP's EAPA regulations, 19 CFR §§ 165.1 through 165.47 unconstitutional; and

(9) Ordering CBP liquidate all of Plaintiff's entries of CISP that were produced and exported by Phoenix without regard to AD/CVD duties; and

(10) Granting Plaintiff such other relief as the Court may deem appropriate.

Respectfully submitted,

/s/ Gregory S. Menegaz

Gregory S. Menegaz
Alexandra H. Salzman
Vivien J. Wang
**DEKIEFFER & HORGAN, PLLC**
Suite 1100
1156 Fifteenth Str., N.W.  20005
Tel: (202) 783-6900
Fax: (202) 783-6909
email:  gmenegaz@dhlaw.com
*Counsel to Phoenix Metal Co., Ltd.*

Dated:  March 2, 2023