## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| _____ ) | |
| PHOENIX METAL CO., LTD., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Ct No. 23-00048 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| THE CAST IRON SOIL PIPE INSTITUTE, ) | |
| ) | |
| Defendant-Intervenor. ) | |
| _____ ) | |

### PLAINTIFF'S REPLY BRIEF IN SUPPORT OF RULE 56.2 MOTION FOR JUDGMENT UPON THE AGENCY RECORD

Gregory S. Menegaz
Judith L. Holdsworth
Alexandra H. Salzman
Vivien Jinghui Wang
**deKieffer & Horgan, PLLC**
Suite 1101
1156 Fifteenth St., N.W.  20005
Tel: (202) 783-6900
email:  gmenegaz@dhlaw.com
*Counsel to Plaintiff*

Dated: March 15, 2024

**TABLE OF CONTENTS**

I.     ARGUMENT ............................................................................................................... 1

    A.     Plaintiff Has a Due Process Right to Notice and Opportunity to be Heard at a Meaningful Time and In a Meaningful Manner. ................................. 1

    B.     Plaintiff Has a Protected Interest. ......................................................................... 9

    C.     CBP's Reliance on Conclusions in Prior EAPA Investigations was Arbitrary and Capricious...................................................................................... 13

    D.     CBP's Rejection of Plaintiff's Rebuttal of New Factual Information was Arbitrary. ..................................................................................................... 16

    E.     Phoenix Addressed Counts IV, V, VI, IX, and X in its Moving Brief. ............... 20

II.    CONCLUSION ....................................................................................................... 21

i

# TABLE OF AUTHORITIES

**CASES**

*Algoma Steel Corp. v. United States*, 865 F.2d 240 (Fed. Cir. 1989)............................................5, 6

*Am. Frozen Food Inst. v. United States*, 855 F. Supp. 388 (Ct. Int'l Trade 1994)........................11

*Am. Pac. Plywood, Inc. v. United States,* No. 20 - 03914, 2023 Ct. Intl. Trade LEXIS 98;
2023 WL 4288346 (Ct. Int'l Trade June 22, 2023) ............................................................ 3, 5, 6-7

*Aspects Furniture Int'l, Inc. v. United States*, 2022 Ct. Intl. Trade LEXIS 131
(Nov. 22, 2022)....................................................................................................................................3

*ATL, Inc. v. United States*, 736 F.2d 677 (Fed. Cir. 1984) ............................................................13

*Best Mattresses Int'l Co. Ltd. v. United States*, 622 F. Supp. 3d 1347 (Ct. Int'l Trade
2023).  ..................................................................................................................................................6

*Boddie v. Connecticut*, 401 U.S. 371 (1971) ...................................................................................12

*Carpenter Tech. Corp. v. United States,* 662 F. Supp. 2d 1337 (Ct. Int'l Trade 2009)...................5

*Commercial Drapery Contractors v. United States,* 328 U.S. App. D.C. 138 F.3d 1, 6
(1998)...................................................................................................................................................2

*Container Store v. United States,* 145 F, Supp. 3d 133I (Ct, Int'l Trade 2016)............................5

*Corus Group PLC v. Bush*, 217 F. Supp. 2d 1347 (Ct. Int'l Trade 2002) ....................................11

*CPC Int'l v. United States*, 896 F. Supp. 1240 (Ct. Int'l Trade 1995)...........................................11

*CS Wind Vietnam Co. v. United States,* 832 F.3d 1367, 1375-1381 (Fed. Cir. 2016)...................15

*Diamond Tools Tech. LLC v. United States*, 545 F. Supp. 3d 1324 (Ct. Int'l Trade
2021) ...................................................................................................................................................3

*DOC v. New York*, 139 S. Ct. 2551 (2019)......................................................................................15

*Electro-Methods, Inc. v. United States*, 728 F.2d 1471 (Fed. Cir. 1984) ..................................2,13

*Encino Motorcars, LLC v. Navarro,* 579 U.S. 211 (2016). ............................................................17

*Ewing v. Mytinger & Casselberry,* 339 U.S. 594 (1950)...................................................................4

*Fuentes v. Shevin*, 407 U.S. 67 (1972)...............................................................................................3

*Gilda Industries, Inc. v. United States,* 446 F.3d 1271 (Fed. Cir. 2006) .......................................10

*Hyundai Steel Co. v. United States*, 659 F. Supp. 3d 1327 (Ct. Int'l Trade 2023)...........................5

*Invenergy Renewables LLC v. United States*, 422 F. Supp. 3d 1255 (Ct. Int'l Trade 2019) ......................................................................................................................10, 11

*James V. Hurson Assocs. v. Glickman*, 229 F.3d 277 (D.C. Cir. 2000) ......................................6, 7

*Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123 (1951) ........................................12

*Kwo Lee, Inc. v. United States*, 24 F.Supp. 3d 1322 (Ct. Int'l Trade 2014) ................................11

*Mathews v. Eldridge*, 424 U.S. 319 (1976)....................................................... 1, 2-3, 13

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983)......................15

*Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92 (2015) ....................................................17

*Pickus v. United States Bd. of Parole*, 507 F.2d 1107 (D.C. Cir. 1974)....................................7, 8

*Royal Brush Mfg. v. United States*, 545 F. Supp. 3d 1357 (Ct. Int'l Trade 2021) ..........................1

*Royal Brush Mfg. v. United States*, 75 F.4th 1250 (Fed. Cir. 2023)..........................................8, 17

*Tai-Ao Aluminum (Taishan) Co. v. United States*, 983 F.3d 487 (Fed. Cir. 2020..........................9

## STATUTES

5 U.S.C. §553 .......................................................................................................................7

5 U.S.C. § 554 ......................................................................................................................4

5 U.S.C. § 555 ......................................................................................................................4

5 U.S.C. § 556 ......................................................................................................................4

21 U.S.C. § 334 ....................................................................................................................4

## REGULATIONS

19 CFR § 165.15(d) ..........................................................................................................7, 8

19 CFR § 165.23(c)........................................................................................................17, 18

21 CFR § 1.980....................................................................................................................4

Plaintiff Phoenix Metal Co., Ltd. ("Phoenix" or "Plaintiff") hereby replies to the response briefs of Defendant United States ("Defendant") and Defendant-Intervenor Cast Iron Soil Pipe Institute ("CISPI" or "Defendant-Intervenor").  *See* Defendant's Response to Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record (February 16, 2024) ("U.S. Rsp."), **ECF 43**, and Defendant-Intervenor's Response to Motion for Judgment on the Agency Record (February 16, 2024) ("CISPI Rsp."), **ECF 45**.

## I.  ARGUMENT

### A.    Plaintiff Has a Due Process Right to Notice and Opportunity to be Heard at a Meaningful Time and In a Meaningful Manner.

In its response brief, Defendant advances several arguments in support of its theory that Phoenix is not entitled to any measure of due process protection before CBP's imposition of interim measures in the underlying EAPA investigation.  U.S. Rsp. at 15-24.  Defendant is wrong in each of its defenses.

Phoenix clearly provides the legal authority supporting the assertion that the opportunity to be heard must occur at a meaningful time and in a meaningful manner to protect a party's legitimate interests.  When an agency's imposition of interim measures affects a party's legitimate interests, as here, then the meaningful time and manner to be given notice and be heard occurs before the imposition of interim measures.  *See* Plaintiff's Rule 56.2 Memorandum in Support of Motion for Judgment Upon the Agency Record (August 9, 2023) at 12-14, ECF 30 ("Phoenix Br."), citing to *Royal Brush Mfg. v. United States*, 545 F. Supp. 3d 1357, 1365 (Ct. Int'l Trade 2021) quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

Legal authority of U.S. appellate courts and the Supreme Court unequivocally state that the due process requirement of notice and opportunity to be heard prior to agency action that

sanctions or imposes a penalty on a party applies to temporary sanctions and penalties.  The U.S. Court of Appeals for the D.C. Circuit stated in its 1998 decision in *Commercial Drapery Contractors*: "{a}n agency may not impose even a temporary suspension without providing the 'core requirements' of due process: adequate notice and a meaningful hearing."  *Commercial Drapery Contractors v. United States*, 328 U.S. App. D.C. 138, 133 F.3d 1, 6 (1998) (concerning the General Services Administration's suspension of government contractor for misconduct and termination of ongoing contracts).  In its decision concerning due process notice and opportunity to be heard in *Electro-Methods*, the Federal Circuit explained that the agency had observed due process when it provided notice to, arranged meetings with, and accepted written rebuttal from, a contractor before imposing temporary measures.  *Electro-Methods, Inc. v. United States*, 728 F.2d 1471, 1473 (Fed. Cir. 1984) ("The Air Force explained in detail the suspension and debarment procedures and stated that no hold had been placed on contracts on which Electro had bid, but that the Air Force was conducting its own review of the affidavits and was considering what might be appropriate action").

In *Mathews v. Eldridge*, the whole case concerned what procedures were due prior to temporary discontinuance of Social Security disability benefits.  424 U.S. 319, 333-334.  The Supreme Court found that the procedures in place satisfied the due process clause of the U.S. Constitution: "prior to the cutoff of benefits the agency informs the recipient of its tentative assessment, the reasons therefor, and provides a summary of the evidence that it considers most relevant.  Opportunity is then afforded the recipient to submit additional evidence or arguments, enabling him to challenge directly the accuracy of information in his file as well as the correctness of the agency's tentative conclusions." *Mathews v. Eldridge*, 424 U.S. 319, 346 (1976).  The Supreme Court also considered the process due before temporary seizure of

property in *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) ("The issue is whether procedural due process in the context of these cases requires an opportunity for a hearing before the State authorizes its agents to seize property in the possession of a person upon the application of another.")  The Supreme Court found that notice and an opportunity to be heard in some form was required by due process, stating:

> {I}t is now well settled that a temporary, nonfinal deprivation of property is nonetheless a "deprivation" in the terms of the Fourteenth Amendment. *Sniadach v. Family Finance Corp.*, 395 U.S. 337; *Bell v. Burson*, 402 U.S. 535. Both Sniadach and Bell involved takings of property pending a final judgment in an underlying dispute. In both cases, the challenged statutes included recovery provisions, allowing the defendants to post security to quickly regain the property taken from them.  Yet the Court firmly held that these were deprivations of property that had to be preceded by a fair hearing.

*Fuentes v. Shevin*, 407 U.S. 67, 84-85 (1972).In light of these decisions by U.S. Courts of Appeal and the U.S. Supreme Court, Defendant's and Defendant-Intervenor's citations to decisions of the U.S. Court of International Trade ("CIT") are not an adequate response to Phoenix's claim that CBP failed to provide it with adequate notice and an opportunity to be heard before the agency imposed interim measures.  *See* U.S. Rsp. at 19, citing to *Diamond Tools Tech. LLC v. United States*, 545 F. Supp. 3d 1324, 1341-42 (Ct. Int'l Trade 2021); *Aspects Furniture Int'l, Inc. v. United States*, 607 F. Supp. 3d 1246, 1273 (Ct. Int'l Trade 2022); *Am. Pac. Plywood, Inc. & LB Wood Cambodia Co., Ltd.*, No. 20-03914, 2023 WL 4288346, at *7-8 (Ct. Int'l Trade June 22, 2023); *see also* CISPI Rsp. at 26.

Defendant also cites to the Supreme Court decision in *Ewing v Mytinger & Casselberry* for the proposition that due process does not require an opportunity to be heard before an agency's preliminary decision.  U.S. Br. at 17-18, citing to *Ewing v. Mytinger & Casselberry*, 339 U.S. 594, 598 (1950).  The case involved the FDA's multiple seizures of mislabeled articles

under 21 U.S.C. § 334.  In that case, the plaintiff argued that it had a due process right to a *court hearing* on probable cause before judicial proceedings were instituted.  The Supreme Court stated that "it is not a requirement of due process that there be judicial inquiry before discretion can be exercised." *Ewing v. Mytinger & Casselberry*, 339 U.S. 594, 599.  Phoenix's due process claim, however, is not that it has a right to a court hearing or even a formal agency hearing. Phoenix understands that proceedings and adjudications such as EAPA investigations do not require a formal agency hearing under the APA (5 U.S.C. § 554, 556).  Rather, 5 U.S.C. § 555 is applicable in this case.

Phoenix claims instead that it had a due process right under U.S.C. § 555 to notice of the EAPA investigation and an opportunity to express its opposition to the evasion allegation before U.S. Customs and Border Protection ("CBP") imposed interim measures.  *See* Phoenix Br. at 22. Indeed, this opportunity is afforded to respondents under the current FDA regulations governing seizures of drugs.  21 CFR § 1.980.  In the case of drugs, where public safety must be protected by preventing the distribution of adulterated or misbranded drugs, the FDA first detains the drugs, but no longer than 20 days (or under certain circumstances, up to 30 days). 21 CFR §§ 1.980(a), (c).  A detention order must be approved and issued to an interested party who would be entitled to claim the drugs as soon as possible. 21 CFR § 1.980(e).  The interested party then has five days to appeal the detention and request an informal hearing.  21 CFR § 1.980(g).  Thus, even while taking appropriate action under the circumstances to protect public safety, the FDA has indeed preserved the due process rights of an interested party when agency action threatens injury to that party's protected interests and ensured that the party receives timely notice and has an opportunity to be heard at a meaningful time and in a meaningful manner.

4

This is all Phoenix has asked for: notice and an opportunity to be heard shortly after CBP initiated its EAPA investigation and before its preliminary determination and imposition of interim measures.  Timely notification of the EAPA proceeding also serves the public interest in preventing evasion by immediately deterring further imports of the implicated merchandise or, possibly, terminating the proceeding if CBP error is apparent.  *See* Phoenix Br. at 17-19.

Defendant-Intervenor expends considerable effort in arguing that Plaintiff has no such right to timely notice and opportunity to be heard.  *See* CISPI Rsp. at 19-31.  CISPI relies heavily on the CIT's decision in *Am. Pac. Plywood, Inc. v. United States*, No. 20 - 03914, 2023 Ct. Intl. Trade LEXIS 98 (Ct. Int'l Trade June 22, 2023).  This Court in the instant case is not bound, however, by other CIT decisions, and must make its own analysis of the due process issues in this case.  As the Federal Circuit stated in *Algoma Steel* "among trial courts it is unusual for one judge to be bound by the decisions of another and, if it is to occur, such a rule should be stated somewhere. That is not done here;" *Algoma Steel Corp. v. United States*, 865 F.2d 240, 243 (Fed. Cir. 1989).  The CIT consistently acknowledges this principle.  *See Hyundai Steel Co. v. United States*, 659 F. Supp. 3d 1327, 1335 n.18 (Ct. Int'l Trade 2023) ("in any case, CIT opinions are not binding,").  *See also, e.g., Container Store v. United States,* 145 F, Supp. 3d 133I, l34I-42 (Ct, Int'l Trade 2016) ("The law is well-settled that trial courts, such as this court, are not bound by the decisions of other trial court judges."); *Carpenter Tech. Corp. v. United States,* 662 F. Supp. 2d 1337, 1343 (Ct. Int'l Trade 2009) (stating that the Court is not bound by a decision of another judge of the same court).

When warranted, prior CIT decisions may be persuasive, especially for issues concerning an agency's past practice, but reliance on *Am. Pac. Plywood* is not warranted here.  *See, e.g.,*

*Best Mattresses Int'l Co. Ltd. v. United States*, 622 F. Supp. 3d 1347, 1383 n.10 (Ct. Int'l Trade 2023). (The court exercises its discretion to consider and address such cases, particularly where the litigants cite them as evidence of Commerce's established practices and preferences."). Plaintiff's argument's do not, however, rely on CBP's past practice but rather on the text of CBP's regulations that obviate notice to the targeted party in an EAPA investigation and provide no opportunity for that party to be heard before CBP's imposition of interim measures.  In such cases, this Court must make its own decision.  *See Algoma Steel*, 865 F.2d at 243 ("with all the criticism directed by appellants towards Judge Restani for not following Judge Newman, . . .. she is right in making her own decision nevertheless.")

In its argument, CISPI first contemplates that CBP's imposition of interim measures without notice and an opportunity to be heard may be a mere procedural act.  CISPI Rsp. at 20-21.  The D.C. Circuit has stated clearly that a mere procedural rule intended to regulate an agency's internal housekeeping must be distinguished from a substantive regulation that goes beyond the technical organization of procedures, regardless of an agency's own characterization of the regulation as "procedural."  "{T}he 'critical feature' of a rule that satisfies the so-called 'procedural exception' is that it covers agency actions that do not themselves alter the rights or interests of parties, although it may alter the manner in which the parties present themselves or their viewpoints to the agency."  *James V. Hurson Assocs. v. Glickman*, 229 F.3d 277, 280 (D.C. Cir. 2000) (internal citations omitted).  Defendant United States points out that "an otherwise procedural rule does not become a substantive one, for notice-and-comment purposes, simply because it imposes a burden on regulated parties."  U.S. Rsp. at 26, citing to *Am. Pac. Plywood,* 2023 Ct. Intl. Trade LEXIS 98 at *17, which, in turn, quotes *James V. Hurson*, 229 F.3d at 281.

In this instant case, the EAPA regulation, 19 CFR 165.15(d), which completely precluded Plaintiff's active participation in CBP's preliminary EAPA investigation, after initiation but before CBP imposed punitive interim measures, is unequivocally a substantive and enforcement regulation that affected Plaintiff's right and interest in defending against the allegation of evasion in a timely manner and potentially preventing the imposition of such measures altogether. As the Court of Appeals for the D.C. Circuit reasoned: "{i}f the regulations regarding parole hearings are likely to produce parole decisions different from those which alternatives would be likely to produce, then the exemption should not apply." *Pickus v. United States Bd. of Parole*, 507 F.2d 1107, 1114 (D.C. Cir. 1974).

In contrast, a procedural rule that is exempt from the statutory requirements that regulate the rule-making process (5 U.S.C. § 553) might regulate a deadline and manner in which Plaintiff must respond to the initiation, for example, within five days of notice and in writing. Such procedural rules that regulate the manner and time of a response to a notice are surely burdensome for a party suddenly confronted with the initiation of an EAPA investigation against it but are materially different from 19 CFR § 165.15(d)(1) that precludes an interested party's participation in the preliminary phase of the EAPA investigation altogether.

Defendant-Intervenor contends that the CBP's EAPA regulation contains *only* procedural rules not covered by the APA formal rulemaking process, which the Court in *American Pacific Plywood* confirmed. *See* CISPI Rsp. at 24; A*m. Pac. Plywood,* 2023 Ct. Intl. Trade LEXIS 98 at *16-17. However, the fact that CBP's EAPA regulations include certain unobjectionable technical rules does not exclude a finding that other provisions of the EAPA regulation, here, 19 CFR § 165.15(d)(1), are substantive in nature. *See, e.g., Pickus*, 507 F.2d 1107, 1114 (D.C. Cir.

1974) (finding that certain provisions of the parole board's regulations were not exempt from rulemaking procedures even though other provisions fell within the APA's procedure and practice exemption).

Both Defendant and Defendant-Intervenor also argue that because the EAPA statute is silent on the methods CBP is to use in providing notice to targeted parties, CBP is somehow free to deny respondents the right to notice and an opportunity to be heard before CBP imposes interim measures. U.S. Rsp. at 26-27; CISPI Rsp. at 21-23. The Federal Circuit's reasoning in *Royal Brush* concerning an interested party's due process right to disclosure of confidential information under an Administrative Protective Order rebuts Defendant's and Defendant-Intervenor's arguments here:

> In other words, the government can avoid compliance with due process requirements by the simple expedient of failing to provide for a protective order in a statute or regulation. We are aware of no case supporting any such extraordinary theory, and it is untenable on its face. The right to due process does not depend on whether statutes and regulations provide what is required by the constitution.

*Royal Brush Mfg. v. United States*, 75 F.4th 1250, 1260 (Fed. Cir. 2023). The same principle applies to Phoenix's due process right to notice of CBP's allegation of evasion and the right to defend against the allegation before CBP's imposition of interim measures.

Finally, both Defendant and Defendant-Intervenor argue that Phoenix has improperly cited to legal authority concerning the Department of Commerce's obligations to provide notice to interested parties. U.S. Rsp. at 20; CISPI Rsp. at 20-23., claiming that it is unclear how a case decided in an investigation by a different agency, under a different statute, and a different set of administrative regulations could apply to an EAPA case. CISPI Rsp. at 21-22, referring to *Am. Pac. Plywood*, 2023 Ct. Intl. Trade LEXIS 98 at *19. This is a senseless statement. A review of

the legal authority on which both Defendant and Defendant-Intervenor (and Phoenix) rely

reveals decisions concerning not only Commerce's determinations but other agencies'

administrative determinations as well, even when the agency has no direct relationship to

antidumping or international trade.  As the Federal Circuit found in review of a Commerce

administrative determination:

> The notice requirement reflects "the broader due-process principle that before an agency may enforce an order or regulation by means of a penalty or monetary sanction, it must 'provide regulated parties fair warning of the conduct [the order or regulation] prohibits or requires.'" *Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1300-01 (Fed. Cir. 2013) (quoting *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 156, 132 S. Ct. 2156, 183 L. Ed. 2d 153 (2012)) (alteration in original).

*Tai-Ao Aluminum (Taishan) Co. v. United States*, 983 F.3d 487, 495 (Fed. Cir. 2020).  As the

EAPA statute is a relatively new law, cases concerning CBP's EAPA regulations and practice

have only recently be considered by the Federal Circuit.  In light of the dearth of legal authority

specifically addressing EAPA cases, it is the responsibility of litigants to consider and draw

support from other long-standing administrative law principles derived from court decisions

concerning administrative investigations by different agencies, under different statutes, and

different sets of administrative regulations.  The Court should disregard Defendant-Intervenor's

statements suggesting otherwise.

### B.    Plaintiff Has a Protected Interest.

Defendant argues that a company has no protected interest in a particular rate of duty,

importation of merchandise, or engaging in international trade.  *See* U.S. Rsp. at 19-20, citing to

Federal Circuit and Supreme Court authority; *see also* CISPI Rsp. at 24-25, citing same potential

interests and additional legal authority.  Phoenix, however, does not claim that its protected

interest is in a particular rate of duty, importation, or engaging in international trade.  Rather,

Phoenix has argued that it has a right to notice of the allegation of evasion and CBP's initiation of its EAPA investigation and an opportunity to be heard at a meaningful time before CBP imposed punitive measures.  Phoenix argued in its moving brief that it was unable to mitigate its injury from the interim measures by consulting with its banks or liquidate assets in time to meet CBP's demand for cash deposits, negotiate with its sureties the terms and conditions for customs bonds, renegotiate contracts with their customers to cover the cost of importing or returning the goods.  CBP's interim measures therefore rendered Plaintiff liable for breach of contract damages vis-à-vis their trading partners and U.S. customers.  *See* Phoenix Br. at 12-17.

The CIT has recognized that when a party is required to fundamentally alter its business operations in order to comply with a challenged Government action, that party suffers irreparable harm.  For instance, in *Invenergy Renewables*, the Court considered the plaintiff's interests that would be irreparably harmed absent a preliminary injunction to prevent further agency action. *Invenergy Renewables LLC v. United States*, 422 F. Supp. 3d 1255 (Ct. Int'l Trade 2019).  First, the Court found "as the Federal Circuit recognized in *Gilda Industries, Inc. v. United States,* 446 F.3d 1271, 1279 (Fed. Cir. 2006), lack of procedure can constitute sufficient injury even where there exists the possibility that the agency's final decision taken in accordance with the proper procedures may not be in plaintiff's favor."  *Invenergy Renewables,* 422 F. Supp at 1272 (concerning standing). "Furthermore, unlike injury for constitutional standing purposes, a procedural injury can itself constitute irreparable harm."  422 F. Supp at 1290.  "The court concludes that Invenergy's alleged harm is indeed simple, but not for the reasons that Q Cells states. It is simple in that Invenergy has suffered a procedural harm flowing from a likely violation of the APA."  *Id*. at 1291.  Further, the Court accepted plaintiff's arguments that "Invenergy and other affected industry players will have to adjust their business plans and

behavior accordingly to reflect the imposition of significant additional duties, resulting in lost business opportunities, cancelled or significantly reduce projects, and a reduction in available clean solar energy." *Id*. *See also Corus Group PLC v. Bush*, 217 F. Supp. 2d 1347, 1354 (Ct. Int'l Trade 2002) *citing CPC Int'l v. United States*, 896 F. Supp. 1240, 1243-45 (Ct. Int'l Trade 1995); *Am. Frozen Food Inst. v. United States*, 855 F. Supp. 388, 393-94 (Ct. Int'l Trade 1994). Protected interests include goodwill, reputation, and freedom to take advantage of business opportunities. *See Kwo Lee, Inc. v. United States*, 24 F.Supp. 3d 1322, 1327 (Ct. Int'l Trade 2014).

> Where an importer demonstrates that compliance with a ruling of Customs regarding country of origin marking would cause the importer to incur costs, expenditures, business disruption or other financial losses, for which the importer has no legal redress to recover in court, even if the importer ultimately prevails on the merits in contesting the ruling, the importer suffers irreparable harm.…

*CPC Int'l, Inc.,* 896 F. Supp. at 1243.  Plaintiffs were forced to fundamentally alter their business operations in order to comply with CBP's demands.  It is unreasonable to inflict such irreparable harm on Plaintiffs with no notice and opportunity to defend themselves or even plan for TRLED's impending action to minimize the harm they might possibly suffer because of TRLED's initiation of EAPA Inv. 7321.

Phoenix showed in its moving brief that CBP violated APA rulemaking provisions by enacting substantive EAPA regulations without the required notice and comment obligation and publication of the final rule at least 30 days before the regulations go into effect.  Phoenix Br. at 19-22.  Phoenix is asking for only basic procedural safeguards of notice and opportunity to defend, not a formal court or agency hearing of any kind.  Given the deep historical significance of such procedural safeguards in the Anglo-American judicial tradition and the U.S.

Constitution, due process must cover the protected interests enumerated above that are protected from irreparable harm due to agency action. *See* discussion in *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 160-174 (1951) (Frankfurter J. concurring opinion).

Defendant-Intervenor argues that all of Phoenix's imports made after CBP's initiation of its EAPA investigation were "future" imports and thereby lost all protection under U.S. law. CISPI Rsp. at 25 & 27. Defendant-Intervenor provides no argument or legal support, however, that CBP has the authority to *maximize* the harm that Phoenix suffers. Completely without merit are Defendant-Intervenor's arguments that Phoenix would have acted in one way or another if it had been informed of CBP's EAPA initiation in a timely manner. CISPI Rsp. at 28-31. Phoenix's argument is that it has a due process right to be informed of the EAPA investigation for the opportunity to rebut the evasion allegation and the opportunity to mitigate the harm from the investigation and impending interim measures. Speculation on whether or not Plaintiff would have actually taken the opportunity to rebut the allegations and mitigate harm to itself does not relieve CBP from its duty to inform and give respondents the opportunity to be heard. As the Supreme Court found in *Boddie v. Connecticut*, "{t}hat the hearing required by due process is subject to waiver, and is not fixed in form does not affect its root requirement that an individual be given an opportunity for a hearing before he is deprived of any significant property interest . . . .." *Boddie v. Connecticut*, 401 U.S. 371, 378-79 (1971).

The Federal Circuit has considered the protected interests of government contractors as liberty interests rather than property interests.

> ATL for its part reasonably expected a fair carrying out of the process. Exactly what process was due ATL is something to be determined not on the validity of the general regulations, but on the facts specifically involved.[19] The Supreme Court has provided guidelines for the type of procedures which are constitutionally acceptable, under the

> fifth amendment, in adverse administrative actions, where both the governmental and private interests that are affected must be analyzed.[20]  More specifically, in suspension cases it is recognized that, although a citizen has no *right* to a Government contract,[21] and a bidder has no constitutionally protected *property* interest in such a contract,[22] a bidder does have a liberty interest at stake, where the suspension is based on charges of fraud and dishonesty.

*ATL, Inc. v. United States*, 736 F.2d 677, 682-83 (Fed. Cir. 1984), citing to *Electro-Methods*, 728 F.2d at 1475 (n19) and *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976) (n20).  Accordingly, Phoenix has protected interests in timely notification and opportunity to be heard, regardless of whether those interests are considered property or liberty interests.

### C.    CBP's Reliance on Conclusions in Prior EAPA Investigations was Arbitrary and Capricious.

In its Statement of Facts, Phoenix straightforwardly explained its relationships with companies implicated in prior EAPA investigations, including Lino International, Dalian Lino, Dalian Metal I/E Co., and Dalian Metal FTZ.  Phoenix Br. at 4-5 & 7-8; *see also* Phoenix Response to Request for Information (April 26, 2022) ("RFI Rsp.") at 4, **PV113-116; BC98-104;** Phoenix Response to Supplemental Request for Information (June 3, 2022) ("Supp. RFI Rsp.") at 4-5, **PV122-123; BC107-108;** and CBP, On-Site Verification Report Enforcement and Protect Act Case Number: 7621 (July 22, 2022) at 2 ("Verif. Rpt."), **PV145; BC128**.  Regarding HiCreek Plumbing Inc. ("HiCreek"), a former Cambodian exporter of cast iron soil pip ("CISP"), Phoenix explained that the company went out of business due to CBP's finding of evasion in prior proceedings.  Phoenix Br. at 7-8.  Phoenix has and never had any affiliation with HiCreek.  Also, Phoenix never tried to obscure the fact that its affiliate Lino International purchased CISP from HiCreek, which, in retrospect, Phoenix's owner Ms. Li stated was a mistake for which Lino International paid the price.  Phoenix Br. at 32; Phoenix, EAPA Cons. Case 7621: Cast Iron Soil Pipes: Submission of Written Argument (August 15, 2022) ("Phoenix Wr. Arg.") at 5, **PD151**.

13

With HiCreek's business failure, Ms. Li recognized the opportunity to set up a new CISP production facility in Cambodia. She therefore rented HiCreek's facilities and purchased HiCreek's production equipment to establish Phoenix as a legitimate producer of CISP in Cambodia. Phoenix Br. at 5 & 7-8; RFI Rsp. at 1-2, 8-10, 27, and Exhibits I-1, I-2, II-3-1, II-3-2, II-4, & VI-1, **PV116, PV113, PV115; BC104, BC99, BC103;** Verif. Rpt. at 2, **PV145; BC128;** Phoenix Wr. Arg. At 2-3, **PD151.**

The EAPA statute does not prevent a company from setting up legitimate production activities in a foreign country even when CBP has found that former affiliates of the new producer were evading AD and CVD orders. Despite Defendant-Intervenor's extensive speculations about what Phoenix would or would not have done if it had been given timely notice of the ongoing EAPA investigation, Defendant-Intervenor supplies no legal authority to support an argument that Phoenix was forbidden to export CISP produced in Cambodia to the United States. *See* CISPI Rsp. at 30-31.

CBP's investigation and verification of Phoenix after imposition of interim measures did not support CBP's initial theory that Phoenix was a front company with no CISP production. *See* CBP's Trade Remedy & Law Enforcement Directorate ("TRLED") Final Determination of Evasion as to Phoenix (Sept. 6, 2022) at 33 ("TRLED Final Det."), **PV155; BC129**. In the end, CBP had to rely on hypothesis and speculation and its well-worn "comingling" theory to arrive at its finding of evasion: "Phoenix Metal's ability to produce soil pipe during verification does not indicate that it did not concurrently engage in evasion through comingling subject and non-subject merchandise." *Id.*

The fact that CBP based its final determination on a theory of comingling required that

Phoenix consider CBP's reasoning behind its conclusions to determine whether CBP's conclusions from the evidence the agency relied on were arbitrary and capricious. Defendant-Intervenor calls this exercise a 're-weighing" of the facts, which the standard of review does not allow this court to do. CISPI Rsp. at 44. Yet even the arbitrary and capricious standard of review requires that the court scrutinize the case facts to ascertain whether the agency considered important aspects of the problem, offers explanations for its decisions that run counter to the evidence before the agency, and whether there is a rational connection between the facts the agency relies on and its conclusions. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The court must ascertain whether the agency's rationale addressed the parties' principal arguments. *CS Wind Vietnam Co. v. United States,* 832 F.3d 1367, 1375-1381 (Fed. Cir. 2016) (analyzing in detail an agency's obligation to set forth a comprehensible and satisfactory justification for its determinations "as a reasonable implementation of statutory directives supported by substantial evidence"). As the Supreme Court state in *DOC v. New York*:

> Our review is deferential, but we are "not required to exhibit a naiveté from which ordinary citizens are free." United States v. Stanchich, 550 F. 2d 1294, 1300 (CA2 1977) (Friendly, J.). The reasoned explanation requirement of administrative law, after all, is meant to ensure that agencies offer genuine justifications for important decisions, reasons that can be scrutinized by courts and the interested public. Accepting contrived reasons would defeat the purpose of the enterprise. If judicial review is to be more than an empty ritual, it must demand something better than the explanation offered for the action taken in this case.

*DOC v. New York*, 139 S. Ct. 2551, 2575-76 (2019). A court's analysis of whether an agency's actions were arbitrary and capricious necessarily involves consideration of the record facts. A claim of "improper re-reweighing" of the facts cannot relieve the court from this task of considering the facts of the case.

In its moving brief, Phoenix challenged CBP's reasoning that Phoenix's purchases of

steel scrap from China may have instead been CISP. Phoenix Br. at 40-43. In its reasoning on this issue, CBP relies heavily on its findings in its investigation of HiCreek as secondary evidence rather than evaluate Phoenix's own evidence as primary evidence. *See* TRLED Final Det. at 27-28. Otherwise, the evidence that CBP cites do not logically or reasonably support its conclusions of evasion. *See* Phoenix Br. at 40-43.

   **D.    CBP's Rejection of Phoenix Rebuttal of New Factual Information was Arbitrary.**

   In its moving brief, Phoenix argued that CBP should have accepted Phoenix's documents filed after verification and the information contained in Phoenix's case brief concerning CBP's conduct of verification. Phoenix Br. at 34-37. CBP rejected Phoenix's attempts to supplement verification documents and rebut CBP's verification report because the 200-day deadline for submitting new factual information had passed. *See* CBP Email re: Verification Exhibits (June 28, 2022), **PD136** and CBP Email to Phoenix re: Written Argument (August 11, 2022), **PD150**. Repeating CBP's justification for rejecting Phoenix's submissions, Defendant-Intervenor insists that CBP had authority to reject Phoenix's new factual information based on its 200-day deadline, which expired on June 8, 2022. CISPI Rsp. at 35.

   First, Phoenix's submissions concerned CBP's verification, which took place from June 14 to June 17, 2022, and CBP's verification report, which CBP issued on July 22, 2022 were events that took place well past CBP's deadline to present new factual information, in this case, by June 8, 2022. *See* Verif. Rpt at 1, **PV145; BC128.** Thus, Phoenix's submission concerning CBP's collection of documents at verification and CBP's verification report could not have possibly been filed by the 200-day deadline. For its part, Defendant argues that the 10-day deadline provided in 19 CFR 165.23(c)(1) for rebuttal to new information that CBP puts on the

record would apply here.  U.S. Br. at 36.  *See also Royal Brush Mfg. v. United States*, 75 F.4th

1250, 1262 (Fed. Cir. 2023).  However, CBP is not bound by its EAPA regulations because these

are discretionary rules.  The Supreme Court's decision involving interpretive rules applies

equally to an agency's procedural rules that have not be promulgated in accordance with the

APA's required formal rulemaking process

> For our purposes, it suffices to say that the critical feature of interpretive rules is that they
> are "issued by an agency to advise the public of the agency's construction of the statutes
> and rules which it administers." *Shalala v. Guernsey Memorial Hospital*, 514 U. S. 87,
> 99, 115 S. Ct. 1232, 131 L. Ed. 2d 106 (1995) (internal quotation marks omitted). The
> absence of a notice-and-comment obligation makes the process of issuing interpretive
> rules comparatively easier for agencies than issuing legislative rules. But that
> convenience comes at a price: Interpretive rules "do not have the force and effect of law
> and are not accorded that weight in the adjudicatory process." *Ibid.*

*Perez v. Mortg. Bankers Ass'n,* 575 U.S. 92, 96-97 (2015).  The court owes no deference to

CBP's decision in imposing deadlines.  If the rejection of new factual information is arbitrary

given the facts of the case before it, the Court is free to reject the agency's actions without

deference.  "{W}here a proper challenge is raised to the agency procedures, and those

procedures are defective, a court should not accord *Chevron* deference to the agency

interpretation."  *Encino Motorcars, LLC v. Navarro,* 579 U.S. 211, 221 (2016).

   In Phoenix's case, the original deadline for submission of written argument was July 29,

2022, within the 10-day deadline to rebut new information contained in CBP's verification report

dated July 22, 2022.  On July 25, however, CBP extended its deadline for submission of written

argument from July 29 to August 2, 2022, which is 11 calendar days after the date of the

verification report.  As noted above, CBP had the discretion, under the specific circumstances of

this case, to accept Phoenix's written argument rebutting new information contained in CBP's

verification report that was one day passed the technical deadline provided in 19 CFR

165.23(c)(1).

Defendant provided the Court with Phoenix's initial written argument, which CBP had rejected and was not included in the administrative record of this case. *See* U.S. Rsp. at 39 and Appendix B to Defendant's Response Brief (February 16, 2024), ECF 43-2 ("U.S. App. B"). Defendant claims that the rejected portions of Phoenix's written argument do not contain rebuttal information to CBP's statements made in its verification report as to the character of Phoenix's owner Ms. Li or information on the verification of Phoenix's old and new production facilities, including reports on machinery, equipment, and production.

First of all, Defendant does not deny that the *verification report itself* contains new factual information, which a redacted portion of Phoenix's written argument confirms was an intended item on CBP's verification agenda. U.S. App. B at 5. CBP's verification report abounds with the impressions of the various CBP verifiers on Ms. Li's and her staff's character and conduct: "{o}n the last day of the on-site verification Ms. Li was upset . . ..""; "Ms. Li became irritated . . ..""; a factory worker was "timid, scared, and nervous during the interview and stopped making eye contact half way through the interview"; "Ms. Li acted confused"; Ms. Li became agitated and angry"; "Ms. Li could not provide a straight answer." Verif. Rpt. at 4, 6, 9 & 13; see Phoenix Br. at 34. All of Defendant's and Defendant-Intervenor's arguments on the purpose of verification to verify information on the record do not justify CBP's reporting of these impressions and the predominant role they play in CBP's final determinations. *See, in particular*, TRLED Final Det. at 25-27, 29, 31-32, **PV155; BC129**; and CBP's Final Results of Administrative Review issued by CBP's Office of Regulations and Rules ("ORR") (January 18, 2023) at 9-10, 11-14 ("ORR Review Det."), **PV165; BC132**. Phoenix was completely justified

in rebutting such reporting by CBP and identifying specific instances in which CBP caused or added to the chaotic atmosphere the large number of verifiers created.  *See* redacted portions of U.S. App. B at 7 and 8.

Phoenix recognized that CBP's primary concern was to verify its production process and production capacity.  It was therefore important to correct aspects of CBP's verification report that indicated that CBP was not able to fully observe Phoenix's production process and capacity. *See* e.g., Verif. Rpt. at 5 and Phoenix redacted rebuttal information included in U.S. App. B at 5 & 6.  The redacted portion of Phoenix's brief included the fact that CBP measured the accuracy of the company's pipe cutting machine, the quantity of pipes that Phoenix produced within a certain production time, and duration of melting times, all of which pertain to production capacity.  CBP's ultimate decision of evasion was based on its comingling theory and conclusions that Phoenix's production capacity calculation was unreliable because the data came from Phoenix, which underlines Phoenix's concern that CBP's reporting was not complete, entirely accurate, or fair.  *See* TRLED Final Det. at 32 & 33, **PV155; BC129**; ORR Review Det. at 9-11, **PV165.**   If the entire process involves questioning a responding exporter, how can the very fact of responding to the questions be per se unreliable?  That is profoundly unreasonable and nonsensical.

### E.    Phoenix Addressed Counts IV, V, VI, IX, and X in its Moving Brief.

Defendant-Intervenor lists several Counts from Phoenix's Complaint that Phoenix allegedly did not address in its moving brief.  CISPI Rsp. at 18-19.  Of those listed, Phoenix did not argue in its briefing that CBP lacked evidence for a reasonable suggestion of evasion in support of CBP's initiation of its EAPA investigation against Phoenix (Count I).  Phoenix also

did not argue that CBP failed to request from Commerce the appropriate antidumping and countervailing duty rates to apply to Phoenix (Count XII).

Defendant-Intervenor's further claims that Phoenix waived its arguments are without merit. Phoenix argued that it was in the process of moving its production equipment and records to a new facility (Count IV). *See* Phoenix Br. at 8, 27 citing to RFI Rsp. at 9 & 27, **PV116; BC104;** Supp. RFI Rsp. at 6, **PV123; BC108**; and CBP Verif. Rpt. at 5, **PV145; BC128**; Phoenix Wr. Arg. at 3-4, PD151. Phoenix also argued at length with factual information that the comportment of the seven CBP verifiers and their comments in CBP's verification report and conclusions in CBP's determinations were arbitrary and capricious (Count V). Phoenix Br. at 9, 27, 29-30, 38, 43-44. Phoenix argued against CBP's false claims and speculations as to Phoenix for actions attributed to its affiliates and CBP's false assumption that HiCreek and Phoenix were somehow related (Count VI). *See* Phoenix Br. at 25, 31-32, 40, 41 & 45.

Count IX concerns Phoenix's due process right to disclosure of U.S. agents' testimony, for instance, as reported in CBP's verification report, used against the company. Phoenix discusses above its right to rebut new information that it could see, but Phoenix could not see other information used against it. *See* Phoenix Br. at 23-26. Defendant-Intervenor is correct in noting that Phoenix was not represented by legal counsel throughout CBP's EAPA investigation. *See* CISPI Br. at 46. The fact is, however, that neither Phoenix *nor legal counsel* would not have had access to confidential information during the agency investigation of Phoenix. Whether Phoenix would have engaged legal counsel with the added benefit of access to confidential information cannot be answered with certainty, but Phoenix repeats here the principle that due process requires that Phoenix be given *the opportunity* to engage legal counsel that has access to

confidential information under an administrative protective order. Phoenix Br. at 23-26.

Count X contains the claim that CBP cannot impose punitive interim measures without giving Plaintiff the right to notice and the opportunity to rebut the factual and legal bases for such measures. Phoenix argued this claim at length in its moving brief. Phoenix Br. at 11-22. Phoenix points out CBP's measures included demands for 250.62% ad valorem cash deposits for merchandise already imported and entered into the United States. *Id*. at 14 & 16. In this context, these rates are "punitive" as "used to describe costs that are so high they are difficult to pay, and that are often used to punish someone or limit their activities: {example} The President has threatened to impose punitive import duties on a range of foreign goods." https://dictionary.cambridge.org/us/dictionary/english/punitive (last viewed March 13, 2024). Further, Phoenix certainly made the case that CBP's enforcement measures cannot be based on mere procedural or interpretive rules that have not been promulgated in accordance with the APA's notice, comment, and publication obligations. Phoenix Br. at 19-22.

Accordingly, Defendant-Intervenor errs in its claim that Phoenix has waived its claims in Counts IV, V, VI, IX, and X of its Complaint.

## II.    CONCLUSION

In conclusion, the Court should find that CBP's interim measures and enforcement actions against Phoenix are not valid and that CBP's determinations are arbitrary and capricious. As such, the Court should void CBP's evasion determination for the raft of procedural infirmities upon which it was built, and which cannot be cured by mere remand long after the fact.

Respectfully submitted,

 /s/ Gregory S. Menegaz

21

Gregory S. Menegaz
Alexandra H. Salzman
Vivien Jinghui Wang[**]
**deKieffer & Horgan, PLLC**
Suite 1101
1156 Fifteenth St., N.W.  20005
Tel: (202) 783-6900
Fax:  (202) 783-6909
Email:  gmenegaz@dhlaw.com
*Counsel to Plaintiff*

Date: March 15, 2024

---

[**] Admitted to New Mexico Bar; practice limited to Federal International Trade Matters pursuant to D.C. Bar Rule 49(c)(2).

**Word Count Certificate of Compliance**

This brief has been prepared utilizing Microsoft Word 2016 using a proportionally spaced typeface (12 point Times New Roman font).

In accordance with this Court's Scheduling Order and the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that his brief complies with the word limitations set forth.  Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains **6,701** words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Gregory S. Menegaz

Gregory S. Menegaz
**DEKIEFFER & HORGAN, PLLC**
Suite 1101
1156 Fifteenth St., N.W.  20005
Tel: (202) 783-6900
Fax:  (202) 783-6909
Email:  gmenegaz@dhlaw.com
*Counsel to Plaintiff*

23